IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| BRENNA LEWIS, | * | |
| | * | |
| | * | 4:07-cv-00287 |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| HEARTLAND INNS OF AMERICA, | * | |
| L.L.C., d/b/a HEARTLAND INN, | * | |
| ANKENY and BARBARA CULLINAN, | * | |
| individually and in her corporate capacity, | * | |
| | * | ORDER |
| Defendants. | * | |
| | * | |

Currently before the Court is a motion for judgment as a matter of law, filed by

Defendants Heartland Inns of America, L.L.C. and Barbara Cullinan (collectively "Defendants")

on December 9, 2010. Clerk's No. 112. Plaintiff Brenna Lewis ("Lewis") filed a response in

opposition to the motion on December 27, 2010. Clerk's No. 124. Defendants filed a reply on

January 6, 2011. Clerk's No. 131. Also before the Court is an application for attorney's fees

and costs filed by Lewis on November 24, 2010. Clerk's No. 109. Defendants filed a response

in opposition to this application on December 9, 2010. Clerk's No. 111. Lewis filed a reply on

December 20, 2010. Clerk's No. 122. The matters are fully submitted.[1]

## I. FACTUAL & PROCEDURAL BACKGROUND

On June 29, 2007, Lewis filed a complaint against Defendants, alleging that Defendants

violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Iowa Civil

---

[1]     The parties have requested oral argument on both motions; however, the Court
does not believe oral argument will substantially aid it in resolving the motions. Therefore, the
parties' requests are denied.

Rights Act ("ICRA"), by: (1) discriminating against Lewis on the basis of sex stereotypes; and (2) retaliating against her for opposing what she reasonably believed to be discrimination.[2] *See* Compl. at 3–6. The case was tried to a jury beginning on November 8, 2010. *See* Clerk's Nos. 91–104. On November 12, 2010, the jury returned a verdict in favor of Lewis on her retaliation claim and in favor of Defendants on Lewis' sex-stereotype discrimination claim. Clerk's No. 97. During the liability phase of trial, the jury awarded Lewis compensatory damages. *Id*. Following a separate punitive damages phase of trial, the jury awarded Lewis punitive damages as well. Clerk's No. 101.

## II. LAW AND ANALYSIS

### A. *Defendants' Motion for Judgment as Matter of Law*

In Defendants' motion, they seek judgment as a matter of law on Lewis' claims for: (1) retaliation; and (2) punitive damages. *See* Renewed Mot. for J. as a Matter of Law & Incorporated Br. (hereinafter "Defs.' Mot.") at 1 (Clerk's No. 112). "Under Rule 50, if the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for a party on an issue, the court may grant a motion for judgment as a matter of law against the party." *Howard v. Mo. Bone and Joint Center, Inc.*, 615 F.3d 991, 995 (8th Cir. 2010) (quoting Fed. R. Civ. P. 50(a)) (internal quotation marks omitted). The Court must "view[] the evidence most favorably to the nonmoving party and drawing all reasonable inferences in its favor." *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 984 (8th Cir. 2008) (citing *Liberty Mut. Fire Ins. Co. v.*

---

[2]     The facts of this case, viewed in the light most favorable to Lewis, have already been stated by the Eighth Circuit. *See Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033 (8th Cir. 2010). Defendants do not argue that Lewis presented evidence at trial that differed from the evidence considered at the summary judgment stage; therefore, the Court will not repeat the facts at length here but will assume the reader's familiarity with the Eighth Circuit's opinion.

-2-

*Scott*, 486 F.3d 418, 422 (8th Cir. 2007)). "If the evidence viewed according to this standard would permit reasonable jurors to differ in the conclusions they draw, judgment as a matter of law cannot be granted." *Id*. (quoting *Liberty Mut.*, 486 F.3d at 422). "However, 'when the record contains no proof beyond speculation to support the verdict, then judgment as a matter of law is appropriate.'" *Hinz*, 538 F.3d at 984 (quoting *Liberty Mut.*, 486 F.3d at 422; and Fed. R. Civ. P. 50(a)(1)). The Court will address each of Defendants' arguments in turn.

  1. *Retaliation*.

  In order to prevail on her retaliation claim, Lewis "had to show that she engaged in protected conduct by opposing a practice that a reasonable person could believe violated [Title VII]; that a materially adverse action was taken against her; and, that there was a causal connection between the protected conduct and the adverse action." *See Helton v. Southland Racing Corp.*, 600 F.3d 954, 960 (8th Cir. 2010). The Eighth Circuit "has held that a plaintiff employee need not establish that the conduct [s]he opposed was in fact prohibited under Title VII to satisfy the first element. Rather . . . [she] must simply prove she had a good faith, reasonable belief that the underlying challenged conduct violated Title VII." *Brannum v. Mo. Dep't of Corr.*, 518 F.3d 542, 547 (8th Cir. 2008) (quoting *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007) (internal quotation marks, footnote, and citation omitted)).

  Defendants argue that "no reasonable jury could have found for Ms. Lewis on her retaliation claim because she had no good faith, objectively reasonable belief that the employment practice she challenged was unlawful." Defs.' Mot. at 2. Specifically, Defendants argue that "[i]n order for Ms. Lewis's alleged oppositional conduct to be protected under Title VII's retaliation provision, Ms. Lewis had to demonstrate an objectively reasonable belief that

reassigning her to the overnight shift would have constituted sex discrimination."[3] *Id.* at 5. This statement, standing alone, is not necessarily incorrect. However, Defendants' arguments about what "constitute[s] sex discrimination" improperly conflate the general concept of "discrimination" with the elements of a *cause of action* for discrimination.

Defendants correctly note that, in order to prevail on a claim for sex discrimination under Title VII, a plaintiff must prove, among other things, that she suffered an "adverse employment action."[4] *See id.* at 6 (citing *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1038 (8th Cir. 2010)). Expanding upon this basic proposition, Defendants assert that Lewis could not have reasonably believed that she had suffered "discrimination" until she had been subjected to—or had a reasonable belief that she was about to be subjected to—an adverse employment action.[5]

_____

[3]    Defendants also argue that Lewis' belief was not objectively reasonable because "all the Defendants did was ask Ms. Lewis to undergo a confirmatory interview for the daytime guest services position." Defs.' Mot. at 4 (footnote omitted). Defendants suggest that, by asking Lewis to submit to a second interview, they were not treating her differently than other employees because the second interview was simply "part of an established policy which pre-dated the Defendants' request of Ms. Lewis . . . ." *See id.* Defendants also suggest that Lewis "violat[ed] legitimate rules and orders of [her] employer" by refusing to undergo a second interview and was, therefore, not protected by Title VII's retaliation provision. *See id.* at 5 (quoting *Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 102 (8th Cir. 1995)). However, Defendants' underlying factual assertions—i.e., that the interview was simply a part of Heartland Inns' standard policy and that Lewis refused to be re-interviewed—were hotly contested by Lewis at trial. Defendants have not demonstrated that the jury could not have reasonably resolved these disputes in Lewis' favor. *See generally* Fed. R. Civ. P. 50(a).

[4]    "An adverse employment action means a material employment disadvantage, such as a change in salary, benefits, or responsibilities." *Brannum v. Mo. Dep't of Corr.*, 518 F.3d 542, 549 (8th Cir. 2008) (quoting *Tademe v. St. Cloud State Univ.*, 328 F.3d 982, 992 (8th Cir. 2003) (internal quotation marks omitted)).

[5]    Defendants cite no authority in support of this proposition. *See* Defs.' Mot. at 5–6, 10–11. In their brief, Defendants rely heavily on *Barker v. Missouri Department of Corrections*, but *Barker* does not support Defendants' argument that Lewis must prove that she reasonably believed she was about to be subjected to an adverse employment action. *See id.* at 2–4 (citing 513 F.3d 831 (8th Cir. 2008)). *Barker* merely stands for the proposition that an

*See id.* at 5–6, 10–11.  The Court does not agree.

Contrary to Defendants' suggestion, Title VII's retaliation provision does not limit its protection to those who oppose what they believe to be "actionable discrimination."  *See id.* at 8. Rather, it protects those who "oppose[] any practice made an *unlawful employment practice*" under Title VII.  *See* 42 U.S.C. § 2000e-3(a) (emphasis added).  Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(2).  Therefore, the test is not whether or not Lewis reasonably believed she had an actionable claim for sex discrimination, but whether Lewis reasonably believed that she was "limited" or "segregated" in a way that deprived—or would have tended to deprive— her of employment opportunities because of her nonconformance with sex stereotypes.  *See id.*

Viewing the evidence in the light most favorable to Lewis, a reasonable jury could have concluded that requiring Lewis to interview for a job she was already performing, in the circumstances alleged, constituted a limitation or segregation that would tend to deprive Lewis of an employment opportunity due to her nonconformance with sex stereotypes.  *See* Pl.'s Br. in Resistance to Defs.' Renewed Mot. for J. as a Matter of Law (hereinafter "Pl.'s Resp.") at 8, 10–12 (Clerk's No. 124-1).  Therefore, Defendants are not entitled to judgment as a matter of law on Lewis' claim for retaliation.

Additionally, the Court notes that "the standard for granting summary judgment 'mirrors'

_____

employee's belief regarding discrimination must be reasonable.  *See* 513 F.3d at 835.

the standard for judgment as a matter of law, such that "the inquiry under each is the same." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)). The Court cannot ignore the fact that the Eighth Circuit has already ruled—based on the same evidentiary offer by Lewis—that Lewis' retaliation claim was submissible to a jury.[6] *See Lewis*, 591 F.3d at 1042–43 (concluding that a reasonable jury could find for Lewis on her retaliation claim based on Lewis' opposition to the second interview requirement). To grant Defendants' motion in these circumstances would be tantamount to overruling the Eighth Circuit—and, of course, "[t]he court of appeals overrules decisions of the trial court, not the other way around." *Holst v. Bowen*, 637 F. Supp. 145, 148 (E.D. Wash 1986). Therefore, for this independent reason, Defendants' motion must be denied.

2.      *Punitive damages.*

Defendants also argue that they are entitled to judgment as a matter of law on Lewis' claim for punitive damages. Defs.' Br. at 11. In response, Lewis argues that Defendants' motion on this issue is improper because Defendants did not move for judgment as a matter of law on the issue of punitive damages at trial. Pl.'s Resp. at 2. In their reply, Defendants do not seriously dispute this contention. *See* Reply to Resistance to Mot. for J. as a Matter of Law (hereinafter "Defs.' Reply") at 4 (Clerk's No. 131). Instead, Defendants argue that "[a]llowing the punitive damages award to stand in this case would constitute plain error resulting in a manifest miscarriage of justice." *Id.*

"Under Rule 50(b), a litigant who fails to move for judgment as a matter of law at the

---

[6]      Even though Defendants' arguments now are not the precise arguments they made to the Eighth Circuit in opposition to Lewis' summary judgment appeal, Defendants do not argue that the evidence Lewis offered at trial differs from the evidence she submitted at the summary judgment stage.

close of the evidence [pursuant to Rule 50(a)] cannot later argue . . . that the verdict was supported by insufficient evidence." *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 655 (8th Cir. 1995) (footnote omitted). The Eighth Circuit has "recognized an exception to this rule where a Rule 50 motion was made shortly before the close of the evidence and the district court indicated that another Rule 50 motion at the close of all evidence would be unnecessary." *Williams v. City of Kansas City, Mo.*, 223 F.3d 749, 752 (8th Cir. 2000) (citing *BE & K Constr. Co. v. United Bhd. of Carpenters & Joiners*, 90 F.3d 1318, 1325 (8th Cir.1996)). "If a party does not comply with Rule 50's requirements or fall within [this] recognized exception, [the Court] reviews only for plain error, and [will] reverse only if the jury's verdict would result in a manifest miscarriage of justice if permitted to stand." *See id*. at 752–53 (citing *Pulla*, 72 F.3d at 655).

Defendants argue that allowing the jury's punitive damages verdict to stand would result in a manifest miscarriage of justice because Lewis failed to prove that Defendants engaged in conscious wrongdoing. *See* Defs.' Reply at 4. In support of this contention, however, Defendants offer no more than a re-hashing of their arguments regarding the sufficiency of Plaintiffs' evidence. *See id*. (citing Defs.' Br. at 12–14). Moreover, Defendants have not established that there "was an absolute absence of evidence to support the jury's verdict" in this case. *See Jones v. St. Clair*, 804 F.2d 478, 480 (8th Cir. 1986) (quoting *Harris v. Zurich Ins. Co.*, 527 F.2d 528, 530 n.1 (8th Cir. 1975) (internal quotation mark omitted)). To the contrary, there was at least some evidence upon which the jury could have awarded punitive damages to Lewis. *See generally* Pl.'s Resp. at 15–16, 19. Therefore, the Court concludes that Defendants have failed to demonstrate that the jury's verdict was plainly erroneous or that allowing the jury's punitive damages verdict to stand would result in a manifest miscarriage of justice. *Cf.*

*Shell v. Mo. Pac. R. Co.*, 684 F.2d 537, 540 (8th Cir. 1982) (affirming a verdict under "plain error" review where "there was evidence upon which a jury could have returned [that] verdict . . . ."). Defendants are not entitled to judgment as a matter of law on Lewis' claim for punitive damages.

### B. *Lewis' Application for Fees and Costs*

In Lewis' motion, she seeks an award of attorneys' fees and costs. *See* Pl.'s Appl. for Att'y Fees (hereinafter "Pl.'s Mot.") at 1 (Clerk's No. 109); *see also* Pl.'s Reply to Resistance to Appl. for Att'y Fees (hereinafter "Pl.'s Reply") at 11 (Clerk's No. 122). In response to Lewis' motion, Defendants raise a number of objections to Lewis' claims for fees and costs. *See* Resistance to Pl.'s Appl. for Att'y Fees (hereinafter "Defs.' Resp.") at 1–2 (Clerk's No. 111). The Court will address each of these objections in turn.

### 1. *Hourly rates for Lewis' counsel*.

Lewis has requested $133,329.75 in attorneys' fees, pursuant to 42 U.S.C. § 2000e-5(k).[7] Pl.'s Mot. at 1; Pl.'s Reply at 11. This amount was calculated using an hourly rate of $350 per hour for the work done by Mark Sherinian ("Sherinian") and $200 per hour for the work done by Andrew LeGrant ("LeGrant"). *See* Pl.'s Mot. Ex. 1, Billing Report (Clerk's No. 109-1); Pl.'s Mot. Ex. 4, Sherinian Aff. ¶ 18 (Clerk's No. 109-4). Defendants do not dispute that the Court has discretion to award fees to Lewis in this case. *See* Defs.' Resp. at 3. They do, however, challenge the hourly rates used to calculate those fees, arguing that the hourly rates stated above are not reasonable or warranted in this case. *See id*. Defendants assert that any award of fees should be calculated using an hourly rate of $225 per hour for the work done by Sherinian and

---

[7]     Initially, Lewis requested $135,954.75 in fees, but reduced the amount requested in response to arguments made by Defendants. *Compare* Pl.'s Mot. at 3 *with* Pl.'s Reply at 11.

$150 per hour for the work done by LeGrant. *Id.* at 5.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates. *See id.* at 433. In their opposition to Lewis' motion, Defendants do not object to the number of hours, *per se*, that Lewis' counsel dedicated to the case.[8] *See* Defs.' Resp. at 3–12. In support of her motion, Lewis has submitted a billing report detailing the number of hours spent on various categories of case-related research and trial preparation.

The Eighth Circuit has adopted the guidelines for attorneys' fees set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See Zoll v. E. Allamakee Cmty. Sch. Dist.*, 588 F.2d 246, 252 (8th Cir. 1978); *Allen v. Amalgamated Transit Union, Local 788*, 554 F.2d 876, 884 (8th Cir. 1977). In assessing attorneys' fees, the district court must consider the following twelve factors:

> (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

---

[8] Lewis originally sought to recover fees and costs related to Sherinian's participation in the Eighth Circuit appeal in this case. *See* Pl.'s Reply at 10. However, Lewis withdrew this request following Defendants' objections. *See id.*; *see also* Defs.' Br. at 16. Now, Lewis seeks only fees for the 1.5 hours Sherinian spent reviewing the appeal briefs. *See* Pl.'s Reply at 10. The Court finds nothing unreasonable about this request for fees. To the extent that Defendants object to this request for fees, that objection is overruled.

*Zoll*, 588 F.2d at 252 n.11. "Under the *Johnson* standards, the minimum award should generally be not less than the number of hours claimed times the attorney's regular hourly rate." *Id.* at 252. "This statement, however, [is] not a complete limitation on the district court's discretion to award only 'reasonable' attorney fees, but only a general guideline to be followed in the absence of unusual circumstances." *Ladies Ctr., Neb., Inc. v. Thone*, 645 F.2d 645, 647 (8th Cir. 1981). Indeed, the Court "remains free to determine the appropriate hourly rate to be paid to an attorney with the skill and experience of [Plaintiff's] counsel, and to determine the number of hours which should be required to competently prepare for and try a case of this type. *Id.* (citing *Brown v. Bathke*, 588 F.2d 634, 638 (8th Cir. 1978)).

Evaluating the *Johnson* factors, the Court finds that the time and labor expended in preparing and litigating Lewis' case is reasonable. While sex discrimination claims, in general, are not particularly novel, discrimination cases are notoriously difficult to win. *See generally* Michael Selmi, *Why Are Employment Discrimination Cases So Hard to Win?*, 61 La. L. Rev. 555 (2001). Moreover, this case presented an unusual set of facts and raised some difficult issues.[9] The Court also recognizes that litigation of this type of case requires a substantial expenditure of time and, therefore, extracts significant opportunity costs from the counsel involved.

Lewis' counsel have presented ample evidence indicating that their claimed hourly rates are reasonable. Courts are to look to the marketplace as a guide in determining what is a "reasonable" attorney fee. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Blum v. Stenson*, 465

---

[9] Indeed, due to the novelty of some of the issues in this case and the Eighth Circuit's resolution thereof, the Court was required to draft some entirely new jury instructions. *See* Clerk's No. 95 at 11–12.

-10-

U.S. 886, 895 n.11 (1984) (stating that reasonableness of requested rates is to be determined with reference to rates prevailing in the community for similar services by attorneys of comparable skill, experience, and reputation). "In addition, when fixing hourly rates, courts may draw on their own experience and knowledge of prevailing market rates." *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005). Lewis has presented affidavits from attorneys that support a finding that the rates claimed by Lewis' counsel are reasonable within this community. *See* Pl.'s Mot. Exs. 5–7; Clerk's No. 113. The Court also finds that it is appropriate to award fees at Lewis' counsel's current rates, due to the delay in the payment of such fees. *See Jenkins*, 491 U.S. at 283–84.

Additionally, the Court notes that Lewis' counsel accepted this case on a contingency fee basis. *See* Pl.'s Reply at 5. Lewis' counsel took a substantial risk that no money would ever be recouped for their services in this case—a risk that significantly increased when the Court granted summary judgment to Defendants on all of Lewis' claims. *See Lewis v. Heartland Inns of Am., L.L.C.*, 585 F. Supp. 2d 1046 (S.D. Iowa 2008). Yet, despite this setback, Lewis' counsel continued to zealously prosecute her claims and ultimately obtained a judgment from the Eighth Circuit reversing the Court's grant of summary judgment. *See Lewis*, 591 F.3d at 1035. This factor, therefore, also supports the reasonableness of the hourly fees requested by Lewis' counsel.

Defendants argue that Lewis' success was "sharply limited" because the jury ruled for Defendants on Lewis' discrimination claim. *See* Defs.' Br. at 8. Defendants suggest that this constitutes a "fundamental failure" on the part of Lewis' attorneys.[10] The Court does not agree.

---

[10] Defendants also suggest that Lewis' discrimination claim was her "predominant claim" because her arguments and evidence focused on discrimination issues. *See* Defs.' Resp.

Litigation is unpredictable and the mere fact that the jury ruled against Lewis on one of her claims does not mean that her attorneys failed her—especially in light of the fact that Lewis received awards for both compensatory and punitive damages. The Court agrees with Lewis that "[t]he fact that the jury determined that punitive damages were proven, especially given the greater burden of proof, is remarkable and reflects a significant accomplishment in this trial." Pl.'s Reply at 6. Moreover, both of Lewis' attorneys clearly were well prepared for trial and experienced in this type of litigation. The Court has no doubt that the expertise of both lawyers played a substantial role in Plaintiff's receipt of a jury verdict and punitive damages on her retaliation claim.

Defendants also argue that awards in similar cases—and in particular, those in which Sherinian has been involved—indicate that his claimed rate of $350 is unreasonable. *See id*. at 3–5. Defendants point out that nearly nine years ago, one of Sherinian's clients was awarded fees based, in part, on a calculation of Sherinian's work at the rate of $175 per hour. *Id*. at 4 (citing *Webner v. Titan Distrib., Inc.*, No. C97-3101, 2002 WL 1283756, at *5 (N.D. Iowa May 14, 2002). Defendants suggest that "there is no justification for doubling an attorney's hourly rate in the space of only eight years, especially because Mr. Sherinian had credentials in 2002 very similar to the credentials he has now."[11] *See id*. The Court does not agree. Sherinian has

_____

at 8. However, Lewis' retaliation claim depended, in large part, on the reasonableness of her belief that she had suffered discrimination. *See generally Helton*, 600 F.3d at 960. Therefore, even if—as Defendants suggest—Lewis' case focused on discrimination issues, this does not necessarily mean that this was a case that "was all about sex stereotype discrimination and only to a very limited [extent] about [Lewis'] retaliation claim." *See* Defs.' Resp. at 8.

[11]    Defendants also suggest that Sherinian's claimed rate is "illusory" because he often works on a contingency-fee basis. Defs.' Resp. at 4. The Court agrees that "[a] rate 'charged' on paper is quite a different thing than a rate at which clients are actually billed and at which they actually pay." *See id*. However, the Court sees no reason to punish Lewis—or her

undoubtedly gained experience since 2002 that his clients, including Lewis, would value. *See*

*generally* Pl.'s Reply at 3–4. Defendants' comparisons to hourly rates charged or awarded in

2002 or 2003 are unpersuasive because they fail to take into account inflation or other market

factors that may have reasonably led to increased hourly rates. Indeed, it appears that the fees

requested by Lewis' counsel are not out of line with hourly rates that have been approved in

similar and more recent cases in this state. *E.g.*, *Dorr v. Weber*, No. C 08-4093, 2010 WL

3833818, at *8–9 (N.D. Iowa Sept. 30, 2010) (concluding that hourly rates of $375 and $350 for

lead counsel were not excessive in a civil rights case). The Eighth Circuit's recent opinion in

*Newberry v. Burlington Basket Company* provides further support for the reasonableness of the

total amount of fees sought by Lewis. *See* 622 F.3d 979 (8th Cir. 2010). In that case, the Eighth

Circuit affirmed an award of $140,000 in fees for a discrimination case brought under the Age

Discrimination in Employment Act and the ICRA. *See id.* at 983. In this case, Lewis seeks

approximately the same amount, even though her attorneys—unlike those in *Newberry*—had to

appeal an order of summary judgment before they could get to trial. *Compare id.* at 981 *with*

*Lewis*, 591 F.3d at 1035. For all of these reasons, the Court concludes that Lewis' requested

attorneys' fees are reasonable in light of the *Johnson* factors.

      2.    *Degree of success*.

      Defendants also argue that the amount of fees requested by Lewis should be reduced

because she did not prevail upon her sex-stereotype discrimination claim. *See* Defs.' Resp. at 7.

It is well within the Court's discretion to reduce an attorneys' fee award based on the lack of

---

counsel—because her counsel often works on a contingency basis. Moreover, in this age of
special fee arrangements and rate discounting, it is difficult to say that most, or any, attorneys
have a truly regular rate.

success of some claims.  *See e.g.*, *Warnock*, 397 F.3d at 1026 ("There is 'no precise rule or formula' for making fee determinations in cases with only partial success, and where, as here, the court cannot separate out which hours were billed for which issues, we 'may simply reduce the award to account for the [plaintiff's] limited success.'" (citation omitted)).  In *Hensley*, the Supreme Court made clear that "where the plaintiff advances discrete, essentially unrelated claims, and prevails on some but not others, it should not be compensated for work on the unsuccessful claims."  461 U.S. at 435.  But where, as here, "a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."  *Id*. at 440.  Indeed, the Eighth Circuit has held that "[o]nce a party is found to have prevailed, a fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit."  *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 806 (8th Cir. 1993) (quoting *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991) (internal quotation marks omitted)).  In this type of case, "counsel's time is devoted to the litigation as a whole, rather than on specific theories of relief, and compensation should be based on all hours reasonably expended to achieve a successful result."  *Hendrickson*, 934 F.2d at 164.

Therefore, while this Court recognizes its authority to reduce an award of attorneys' fees for limited success, it declines to do so in this case.  Lewis' claims for discrimination and retaliation were clearly related and the evidentiary bases for these claims were inextricably intertwined.  Indeed, is difficult to see how the evidence Lewis presented—or her attorneys' trial preparation more generally—would have differed in any meaningful way if she had only brought a retaliation claim.  Moreover, "the gauge of success is the result of the lawsuit in terms of relief;

there should not be a downward adjustment simply because not every argument or theory prevailed." Alan Hirsch & Diane Sheehey, AWARDING ATTORNEYS' FEES & MANAGING FEE LITIGATION 29 (Fed. Jud. Ctr.1994) (citations omitted). Accordingly, the Court finds that all claims in the present case were related, legally and factually, and that Lewis' counsel should receive fully compensatory fees for their work on this litigation as a whole.

3.     *Costs and attorney expenses.*

In her motion, Lewis also seeks reimbursement for various costs incurred by her attorneys in preparing and prosecuting this case. *See* Pl.'s Mot. at 1; *see also* Pl.'s Reply at 8. "District courts may award costs to a prevailing party." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) (citing Fed. R. Civ. P. 54). The amount of costs awarded is an "issue [] within the sound discretion of the district court . . . ." *Poe v. John Deere Co.*, 695 F.2d 1103, 1108 (8th Cir. 1982). "However, such costs must be set out in 28 U.S.C. § 1920 or some other statutory authorization." *Smith*, 436 F.3d at 889. Section 1920 provides that:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

In a Title VII case, a prevailing party may also recover "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client," pursuant to 42 U.S.C. § 2000e-5(k). *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008) (quoting *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001)). Defendants object to a number of the costs and other expenses claimed by Lewis. The Court will address these objections in turn.

    a. *Failure to file Form A.O. 133*.

Defendants argue that Lewis is not entitled to any costs because she did not file Form A.O. 133. *See* Defs.' Resp. at 12 (citing L.R. 54(a)(1)(A)). Local Rule 54(a)(1)(A) states that "[w]ithin 14 days after entry of judgment, a party entitled to recover costs must complete and file a form A.O. 133. Failure to file the form by this deadline constitutes a waiver of the right to have costs taxed." Lewis did not file a Form A.O. 133. Therefore, Defendants argue that the Court should deny Lewis any costs. *See* Defs.' Resp. at 12. The Court does not agree. Form A.O. 133 requires a detailed accounting of claimed expenses. Lewis has provided a detailed accounting of the various expenses she is claiming. Therefore, the Court can see no prejudice to Defendants from Lewis' failure to file the requisite form. Indeed, Defendants have not even suggested that they have suffered any such prejudice. Moreover, under Local Rule 54, Lewis' failure to file Form A.O. 133 does not strip this Court of the ability to award costs, but merely gives the Court discretion to deny Lewis' request for costs. *See* L.R. 54(a)(1)(A); *see also* L.R. 1(d) ("The Local Rules are subject to modification in any case at the discretion of the presiding judge."). Although the Court has discretion to deny Lewis her request for costs, the Court

declines to do so in this case.  *See generally* Fed. R. Civ. P. 1.  This objection is overruled.

b.  *Videotaped depositions*.

Defendants argue that Lewis is not entitled to recover the costs she expended in videotaping the deposition of witness Morgan Hammer ("Hammer"), because videotaping that deposition was "not necessarily obtained for use in this case."  *See* Defs.' Resp. at 13 (citing *EEOC v. CRST Van Expedited, Inc.*, No. 07-CV-95, 2010 WL 520564, at *5–6 (N.D. Iowa Feb. 9, 2010)).  In the case relied upon by Defendants, the plaintiff had videotaped every deposition and "ha[d] not offered a persuasive reason" for doing so.  *See CRST*, 2010 WL 520564, at *19. In this case, by contrast, Lewis argues that videotaping this particular deposition was reasonably necessary because Morgan Hammer's appearance was relevant to the issues raised in Lewis' case and it was "critical" to show the physical differences between Hammer and Lewis.  *See* Pl.'s Reply at 8.  The Court finds this to be a persuasive reason for videotaping Hammer's deposition and concludes that the video recording was "necessarily obtained for use in the case." *See* 28 U.S.C. § 1920(2).  Defendants' objection is overruled.

c.  *Focus group*.

Defendants also argue that Lewis is not entitled to recover fees or other costs incurred in relation to the focus group session she held on October 30, 2010.  Defs.' Mot. at 13.  Defendants argue that neither Sherinian nor LeGrant reasonably needed "to engage in a mock jury trial exercise" to prepare for Lewis' trial because they both had trial experience.  *See id*. at 14. Defendants argue that focus groups are "luxuries" that are not reasonably necessary to further the litigation.[12]  *Id*. (citing (citing *CRST*, 2010 WL 520564, at *17; and *Goss Int'l Corp. v. Tokyo*

_____

[12]  In support of this argument, Defendants cite two cases from the United States District Court for the Northern District of Iowa.  *See* Defs.' Resp. at 14 (citing *CRST*, 2010 WL

-17-

*Kikai Sisakuho, Ltd.*, No. C00-35, 2004 WL 1234130, at *7 (N.D. Iowa June 2, 2004)).

Defendants state that the total cost of the focus group was $3,558.10. *Id*. at 14. Most of this cost

consisted of "$3,227.50 in fees generated for the attorneys' presence at the focus group . . . ."

*See id*. Defendants assert that, in addition to these fees, "there were significant expenses for the

exercise." *Id*. These "significant expenses" consisted of payments of $50 to each focus group

participant, for a total of $300, and $30.60 for refreshments for the participants, which Lewis

purchased from Hy-Vee.[13] *See id*.

     In response, Lewis argues that the focus group was "critical" in refining her trial strategy

and presentation. *See* Pl.'s Reply at 9. Lewis also argues that focus group expenses are not *per*

*se* unreasonable, pointing out that other courts have granted requests for expenses related to

focus groups. *See id*. (citing *Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*,

No. CV 00-1693, 2003 WL 23715982, at *8 n.12 (D. Or. Oct. 27, 2003), *vacated on other*

*grounds sub. nom.*, *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc.*, 549 U.S.

312 (2007) (collecting cases)). Lewis further argues that *CRST* "is distinguishable as the Court

dismissed the case on summary judgment making a trial unnecessary. Here [Lewis'] counsel

conducted the focus group ten days before trial when it became clear that the trial would

---

520564, at *17; and *Goss*, 2004 WL 1234130, at *7). Defendants suggest that the Court should
"maintain uniformity of rulings between the Northern and Southern District federal courts . . ."
*Id*. at 13. The Court does not agree. Although the Court can, and often does, consider the
rulings of the courts in the Northern District of Iowa as persuasive authority, this Court has no
obligation to "maintain uniformity" with the rulings of any other district court. In this case, the
cases cited by Defendants are not persuasive or particularly helpful to the Court because,
because, in each of those cases, the court simply concluded that mock jury expenses were "not
reasonably necessary to further the litigation in this case," without further discussion or
explanation. *See CRST*, 2010 WL 520564, at *17; and *Goss*, 2004 WL 1234130, at *7.

     [13]    The Court takes judicial notice of the fact that Hy-Vee is a local supermarket
chain with generally low prices.

proceed." *Id.*

It appears that in this case, the focus group-related "expenditures contributed to the litigation, benefitted [Lewis' case] and are compensable" as reasonable out-of-pocket expenses incurred by Lewis' attorneys. *See Guzman v. Bevona*, No. 92 CIV. 1500, 1996 WL 374144, at *5 (S.D.N.Y. 1996); *see also Sturgill*, 512 F.3d at 1936. Unlike the party that sought focus-group expenses in *CRST*, Lewis waited to conduct her focus group until trial was imminent. *See CRST*, 2010 WL 520564, at *17 ("CRST states that it held the [mock jury trial] exercise before the court ruled on its dispositive motions and that, although this case did not ultimately go to trial . . . ."). Contrary to Defendants' suggestions, it does not appear that Lewis' attorneys held the focus group simply to polish their trial skills, but that they enlisted the participation of a focus group in their work preparing their client—and main witness—for trial. Defendants do not argue that Lewis' counsel did not need to engage in witness preparation generally or that Lewis' participation in the focus group session was duplicative of any other witness preparation sessions with her counsel. Therefore, the Court cannot conclude that the attorneys' fees accrued during this exercise were unreasonable.

The Court also cannot agree with Defendants that the focus group involved "significant expenses" beyond the attorneys' fees. *See* Defs.' Resp. at 14. The total amount of additional expenses was only $330.60, and it appears that counsel made an effort to keep those costs low. *See id.* (indicating that the focus group had only six participants and that, in addition to paying each participant a modest amount for his or her time, the only expense was a small amount of "refreshments" purchased from a local supermarket). For all of these reasons, Defendants' objections are overruled.

d. *Work by legal assistants.*

Defendants also argue that many of Lewis' requests "related to work done by legal assistants" should be denied. *See* Defs.' Resp. at 17. Defendants concede "that non-legal tasks delegable to a non-professional assistant can be compensable, though at a reduced rate." *Id.* Nonetheless, Defendants argue that "many of the paralegal charges claimed by [Lewis'] counsel are for clerical tasks or are simply not reasonable to pass on to the Defendants." *Id.* The Court is not persuaded by Defendants' arguments. It does not appear that Lewis is seeking reimbursement for merely clerical tasks and, moreover, it appears that the paralegals in this case—as in many cases—provided invaluable support to the attorneys. *See* Pl.'s Reply at 10–11. Defendants' objections are overruled.

e. *Depositions of certain witnesses.*

Defendants argue that Lewis' counsel "took the depositions of Brenda Renoe, Andrea Lowe, Angela Freeman, and Tiffany Curley for no discernable purpose, and therefore should not recover the expenses of having done so." Defs.' Resp. at 18. Defendants do not, however, identify any specific requested expenses—or any specific amount of expenses—that the Court should deny. *See id.* at 18.

Lewis does not respond to Defendants' arguments about these depositions in her reply. *See* Pl.'s Reply at 1–11. However, "Rule 54 represents a codification of the presumption that the prevailing party is entitled to costs. In other words, the losing party bears the burden of overcoming the presumption that the prevailing party is entitled to costs." *CRST*, 2010 WL 520564, at *3 (quoting *168th & Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945, 958 (8th Cir. 2007) (internal quotation marks omitted)). In this case, Defendants have offered

nothing more than their own *ipse dixit* in support of their assertion that the challenged depositions were conducted for "no purpose." *See* Defs.' Resp. at 18. The Court concludes that this is not sufficient to overcome the presumption that Lewis is entitled to recover all of her costs. *See Rave Reviews*, 501 F.3d at 958. Discovery is, by its nature, unpredictable, and the mere fact that these witnesses were not called at trial does not, in and of itself, prove that their depositions were not "necessarily obtained for use in the case . . . ." *See generally* 28 U.S.C. § 1920(2). Nor does it prove that these expenses were not "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client." *See Sturgill*, 512 F.3d at 1036. Moreover, there is no indication in the record that Defendants did not have a full and fair opportunity to challenge these depositions before they were taken—by, for example, moving for a protective order—if indeed Defendants believed that these depositions were being taken for "no purpose." Defendants' objections are overruled.

        4.     *Additional considerations*.

The Court also notes that, considering the years of work Lewis' counsel has put into this case, the total amount of fees requested by Lewis "averages out to a very moderate payment. It certainly does not equate with any bonanza or pot of gold." *See Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1376 (D. Minn. 1985). In light of this fact, the Court is not persuaded that Defendants' approach—i.e., second-guessing each and every expenditure made by Lewis' counsel—is a fair or proper way to evaluate the reasonableness of Lewis' claims for fees and costs. Defendants have not pointed the Court to any truly extravagant expenditures and, in the end, have not convinced the Court that the total amount of fees and costs sought by Lewis are objectively unreasonable. Therefore, for this additional reason, Defendants' objections are

overruled.

## III.  CONCLUSION

For the reasons stated herein, Defendants' motion for judgment as a matter of law (Clerk's No. 112) is DENIED.  Lewis' application for attorneys' fees and costs (Clerk's No. 109) is GRANTED.  The Court awards Lewis $133,329.75 in attorneys' fees and $12,069.10 in costs.  In light of this ruling, Lewis' appeal of the Magistrate Judge's Order on Defendant's Motion to Quash (Clerk's No. 142) is DENIED as moot.

IT IS SO ORDERED.

Dated this ___10th___ day of February, 2011.


ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT